ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

SLOAN HEFFRON (CABN 285347)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    Fax: (415) 436-7234
    Sloan.heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-MJ-71962 MAG |
| Plaintiff, | UNITED STATES' MOTION FOR DETENTION |
| v. | DATE: January 9, 2024<br>TIME: 10:30 a.m. |
| DARRYL DEANDRE RUSHING, | COURT: Hon. Lisa J. Cisneros |
| Defendant. | |

    The United States respectfully moves the Court to order that defendant Darryl Deandre Rushing be detained pending trial. Rushing is a recidivist felon and an admitted member of Eddy Rock, a violent San Francisco criminal street gang. For the majority of his adult life, Rushing has been either incarcerated or on some form of supervision. Nevertheless, he has still amassed a significant criminal record. Since 2013, Rushing has been convicted of felony offenses in four separate cases, on charges ranging from first degree residential burglary, to carrying a concealed firearm, to battery resulting in serious bodily injury. During this same period, Rushing was also convicted of misdemeanor convictions in four additional cases, including for resisting a peace officer. Rushing has been sentenced to state prison in at least three separate cases. He has also returned to custody for violating the conditions of probation and parole.

    In the current case, police found Rushing in possession of a stolen, loaded firearm concealed in a

holster underneath his clothing. During this encounter, Rushing physically resisted officers' attempts to detain him in order to seize the firearm.

Rushing has repeatedly and convincingly demonstrated that he is a threat to public safety and is unable to follow the conditions of supervision. This Court should order that Rushing be detained pending trial because there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

## **BACKGROUND**

On Saturday, November 4, 2023, around 10:19 p.m., uniformed San Francisco Police Department ("SFPD") officers John Quinlan and Chiluugin Tumurchudur responded to an apartment building located on Turk Street in San Francisco following a report of a person attempting to break into an apartment on the building's third floor. While en route to the building, dispatch advised officers that the suspect was described as a black male adult in his 30s with a large build, 5'10" tall, wearing an unknown color shirt and red pants. Dispatch further advised that there were no weapons seen.

Officers entered the apartment building and encountered Rushing standing behind the front counter in the lobby. Rushing is a 30-year-old black male, approximately 6'0" tall, and 160 pounds. At that time, Rushing was dressed in red sweatpants and a black sweatshirt. Officers told Rushing why they were in the building, then went upstairs to an apartment on the third floor, where they met with the reporting party (the "RP").

In summary, the RP said that she heard loud kicking on her front door, as if someone was attempting to break-in. The RP observed a man outside of her unit, who she described as a black male in his 30s, wearing a black sweatshirt and red sweatpants. The man did not make entry into her unit, and her door was undamaged. The RP said she was unfamiliar with Rushing and his status as the front desk employee in the building.

The officers returned to the lobby and spoke with Rushing. Rushing stated that he did not know what the RP was talking about. Rushing denied kicking her door and said that he had actually been upstairs deescalating a dispute. Rushing then asked Officer Quinlan for his name and badge number, which Officer Quinlan provided. Rushing then leaned over the counter to write down Officer Quinlan's name and badge number. As he bent forward at the waist, Rushing's sweatshirt began to rise, exposing

his midsection. At this time, Officer Quinlan observed the barrel of a firearm in a holster attached to Rushing's torso, underneath his sweatshirt, in plain view. Upon seeing the firearm, Officer Quinlan grabbed Rushing's right arm and raised it away from the area of the firearm. Officer Tumurchudur grabbed Rushing's left arm. Rushing tensed his muscles and pulled his arms closer to his chest. Officers told Rushing to relax his arms, stop resisting, and place his arms behind his back. Rushing refused numerous orders and continued to physically resist officers. Eventually, officers overcame Rushing's resistance and placed him in handcuffs.

Once Rushing was handcuffed, Officer Quinlan removed the holster from his torso. The holster contained a .40 caliber Glock semi-automatic pistol. The firearm was loaded with 15 rounds of .40 caliber ammunition, one of which was in the chamber. A subsequent records query revealed that the firearm was reported stolen in Houston in 2019.

On December 28, 2023, the United States filed a criminal complaint charging Rushing with a violation of 18 U.S.C. § 922(g)(1). Dkt. 1.

## APPLICABLE SECTIONS OF THE BAIL REFORM ACT

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

<u>Flight Risk Standard – Preponderance of Evidence</u>

Facts used to establish a finding that the defendant poses a risk of flight pending trial must be shown by a preponderance of evidence. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

<u>Danger Standard – Clear and Convincing Evidence</u>

"A finding that a defendant is a danger to any other person or the community must be supported by clear and convincing evidence." *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).

*Factors for Deciding Detention or Release*

In determining whether the pretrial detention standard is met, Courts are to consider information regarding:

(1) the nature and seriousness of the offense charged;

(2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Of these four factors, the weight of the evidence against the defendant is the least important. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Consideration of factors outside the articulated factors set forth in Section 3142 is disfavored. *United States v. Diaz-Hernandez,* 943 F.3d 1196, 1199 (9th Cir. 2019).

## **DISCUSSION**

As discussed below, each of the applicable § 3142(g) factors weighs in favor of detention.

**A. Nature and Circumstances of the Offense Charged - § 3142(g)(1)**

There is no question that Rushing's crime—18 U.S.C. § 922(g)(1)—is a serious offense because of the danger posed by convicted felons who arm themselves. *United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023) ("while an offense under § 922(g)(1) is considered nonviolent, it is a serious felony") (referencing Bail Reform Act factors); *Caron v. United States*, 524 U.S. 308, 316-17 (1998) ("Massachusetts treats [convicted felon] petitioner as too dangerous to trust with handguns, though it accords this right to law-abiding citizens. Federal law uses this state finding of dangerousness in forbidding petitioner to have any guns."); *United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (observing that Congress passed Section 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship." (internal quotation marks omitted)). In fact, the firearms offense charged in the Complaint is one of the serious crimes specifically listed in Section 3142(g) that the Court should take into consideration in determining whether bail is appropriate.

As described above, Rushing was found in possession of a stolen semiautomatic handgun loaded with one live round in the chamber and 14 additional live rounds in the attached magazine. When officers encountered Rushing in the lobby of an apartment building, they were responding to a report of an attempted residential burglary alleged to have occurred upstairs minutes before. Rushing matched

the suspect description provided by the reporting party. Once the officers observed and attempted to seize the firearm, Rushing physically resisted the officers until he could be handcuffed. His actions in this case were extraordinarily dangerous and jeopardized his safety—as well as that of the responding police officers and the building's tenants. This Court should be concerned by these facts alone.

Moreover, as discussed below, Rushing engaged in this conduct after having sustained numerous prior convictions, including for conduct of this nature: residential burglary, firearms possession, and resisting police. The nature and circumstances of the present offense strongly favor detention.

### B. Weight of the Evidence Against the Defendant – § 3142(g)(2)

Although the Ninth Circuit treats this as the least important factor, courts are still "require[d]" to consider it. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released). Likewise, strong evidence of a defendant's guilt "makes it more likely that he will flee," since he has less incentive to stick around and litigate the case. *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991).

The weight of the evidence against Rushing is overwhelming. As detailed above, police observed Rushing in possession of a loaded firearm that was concealed in a holster underneath his clothing. This encounter was captured in the body worn camera ("BWC") video recordings of the responding officers. An ATF Special Agent with expertise in tracing the place of manufacture for firearms has opined that the gun was manufactured outside the state of California. Additionally, the firearm was previously reported stolen out of Houston, Texas, and therefore necessarily crossed state lines to be recovered in California. And, as set forth below, Rushing has previously been convicted of felony offenses in four separate cases, including a 2015 state conviction for being a prohibited person in possession of a concealed firearm. The sole count charged in the Complaint is supported by ample evidence. This factor therefore weighs in favor of detention.

### C. History and Characteristics of the Defendant - § 3142(g)(3)

This factor weighs heavily against release. Rushing's adult criminal history, detailed below, results in a Criminal History Category VI under the U.S. Sentencing Guidelines.

//

| Sentencing Date | Statute of Conviction | Crime of Conviction | Court / Case Number / Sentence |
|---|---|---|---|
| 7/2/13 | Cal. Pen. Code § 459 | Second Degree Burglary (misdemeanor) | **CASC San Francisco / 12021524**<br>• 60 days' jail<br>• Three years' probation |
| 7/2/13 | Cal. Pen. Code § 459<br><br>Cal Pen. Code § 496(a) (three counts) | Second Degree Burglary (misdemeanor)<br><br>Receipt of Stolen Property (three counts) (misdemeanors) | **CASC San Francisco / 12026584**<br>• 60 days' jail<br>• Three years' probation |
| 5/6/15 | Cal. Pen. Code § 459 | First Degree Residential Burglary (felony) | **CASC San Francisco / 14005999**<br>• Two years' state prison |
| 8/18/15 | Cal. Pen. Code § 459 | Second Degree Burglary (felony) | **CASC San Francisco / 15014929**<br>• 16 months' state prison |
| 12/7/15 | Cal. Pen. Code § 148(a)(1) | Obstructing a Public Officer (misdemeanor) | **CASC San Mateo / NF426351A**<br>• 180 days' jail (concurrent) |
| 12/7/15 | Cal. Pen. Code § 25400(c)(4) | Carrying a Concealed Firearm (felony) | **CASC San Mateo / NF426245A**<br>• Eight months' state prison (Concurrent) |
| 12/3/18 | Cal. Pen. Code § 459 | Second Degree Burglary (misdemeanor) | **CASC San Francisco / 17016569**<br>• 120 days' jail<br>• Two years' probation |
| 3/19/20 | Cal. Pen. Code § 243(d) | Battery with Serious Bodily Injury (felony) | **CASC San Francisco / 19012928**<br>• 216 days' jail<br>• Three years' probation |

While the mere existence of these convictions demonstrates that Rushing is an unsuitable candidate for pretrial release, the facts underlying several of the convictions are particularly concerning. Details of the following three felony convictions further illustrate why pretrial release in this case would put the public at risk.

**2015 Residential Burglary Conviction**

As noted, in May 2015, Rushing was convicted in San Francisco of residential burglary, for which he sentenced to two years in state prison. That conviction arose from an incident in which Rushing and two other men, Deonte Smith[1] and Jamariea Newt, committed a home-invasion robbery of a San Francisco residence occupied by an elderly married couple, ages 90 (husband) and 86 (wife)

---

[1] According to San Francisco Police Department Sergeant Pat Griffin, Deonte Smith was an Eddy Rock gang member who later died due to illness.

6

respectively.  The couple was present in their residence at the time of the home invasion.  SFPD officers responding to the residence observed three men—including Rushing—running down the street of the victims' residence and entering a rented Jeep SUV (the "Jeep").  Uniformed officers ordered the men to stop.  All three men ignored the orders and instead drove off in the Jeep.  One of the responding officers was struck on the wrist by a mirror on the Jeep as it fled the scene.  Officers then returned to their police vehicles and chased the Jeep for approximately 2.3 miles before officers terminating the pursuit.  Shortly after, officers found that the Jeep had crashed into a house, at which point its three occupants fled.  Officers located the Jeep's driver, Deonte Smith, hopping fences, at which point he was arrested.  During a search of Smith's person, officers located approximately $694 in cash.  Officers located the second man, Jamariea Newt, hiding under a nearby vehicle.  A search of Newt's person uncovered $300 in cash.  Officers found Rushing in a nearby backyard, hiding underneath a boat.  After taking Rushing into custody, officers located $301 in cash that Rushing had concealed under the boat.

      Meanwhile, other officers responded to the victims' residence.  There, one of the responding officers contacted the 86-year-old wife, who spontaneously exclaimed, "I'm so scared!"  The reporting officer described the wife as nervous and shaking uncontrollably.  The wife said that she saw three black males in their 20s walking inside her house, and that one of the men forced his way into her bedroom and proceeded to go through her drawers.  The wife added that the only thing she knew to be missing was $300 cash.

      Officers also spoke with the 90-year-old husband, who stated that two unknown male subjects with masks approached him in his kitchen, and that one of the men struck him in the head with an unknown object.

      At the time of this incident, Rushing was active to two grants of probation arising from prior burglary convictions.

**2015 Firearms Conviction**

      The case presently before this Court is not the first instance in which Rushing physically resisted police after being found in possession of a stolen, loaded firearm.  Rushing's December 2015 felony firearms conviction arose from an incident in which South San Francisco Police performed a traffic stop of a car driven by a woman observed smoking marijuana while driving.  Rushing was a passenger in the

car. During a subsequent search of the vehicle, an officer found a loaded .45 caliber semi-automatic handgun underneath Rushing's seat. When the officer located the firearm, Rushing immediately fled the scene on foot. Following a brief pursuit, officers located Rushing at a nearby hotel. There, Rushing physically resisted officers as they attempted to take him into custody. Eventually, officers were able to subdue Rushing, and he was placed in handcuffs. Police later determined that the recovered firearm had been stolen from a man in Georgia. At the time of this incident, Rushing was active to two grants of probation arising from prior burglary convictions.

**2020 Conviction for Battery with Serious Bodily Injury**

Rushing's March 2020 felony conviction for Battery with Serious Bodily Injury resulted from a road rage incident captured on surveillance video. In that case, the victim was riding a bicycle in the bicycle lane eastbound on Golden Gate Avenue, near Jones Street, in San Francisco. Rushing drove a black Lexus into the bicycle lane and became irate when the victim did not move out of the way for him. Rushing then stopped, exited the Lexus, and approached the victim. Rushing proceeded to yell at the victim, who then turned away from Rushing to get back onto his bicycle. At that point, Rushing pushed the victim onto the ground, causing the victim to land on his wrist. Rushing then returned to the Lexus and, while pulling away, struck the victim, then proceeded to drive over the victim's vehicle before fleeing the scene. As a result of this incident, the victim suffered a broken wrist. Rushing was on parole at the time of this event.

In addition to the convictions listed in the table above, Rushing has previously violated the conditions of his probation and parole on numerous occasions. This history of recidivism is a significant factor in assessing whether he is likely to abide by any conditions of release in the present case. Additionally, Rushing's repeated instances of fleeing from police suggest that he presents a risk of flight. The nature of his prior criminal acts, and his demonstrated history of failing to obey orders from law enforcement and other courts, counsel against his release under any conditions.

**D. Danger to the Community - § 3142(g)(4)**

Rushing's past criminal history alone demonstrates that he poses a significant danger to the community. In addition to the aforementioned convictions, a key factor for this Court to assess is the fact that Rushing is a member of the Eddy Rock criminal street gang, a violent street gang based in the

Fillmore neighborhood of San Francisco.[2] Indeed, Rushing himself previously acknowledged his membership in Eddy Rock. Specifically, in February 2014, Rushing was involved in a physical fight with a rival gang member at the Tanforan Mall in San Bruno. Immediately after, a San Bruno Police Department Officer observed mall security officers chasing Rushing from the area of the fight. The uniformed police officer repeatedly ordered Rushing to stop, to no avail, and a foot pursuit ensued. After scaling a fence, Rushing was eventually arrested for resisting or delaying a peace officer. During a subsequent interview, Rushing acknowledged that he had been involved in a physical altercation with another individual, and further admitted to being an Eddy Rock gang member.

While Rushing's membership in Eddy Rock dates back over a decade, he remains an active member in the gang. San Francisco Police Department Sergeant Patrick Griffin and Officer Bryan Zahn—each of whom has previously provided expert testimony in California Superior Court concerning criminal street gangs in San Francisco—have both identified Rushing as an active member of the Eddy Rock criminal street gang.

Even without these facts as context, Rushing's possession of a loaded, stolen firearm concealed in his clothing, and his physical resistance of officers attempting to seize the firearm, serve as yet another example of the substantial danger he poses to himself and the community.

//
//
//
//
//
//
//

---

[2] The violent rivalry between Eddy Rock and the Central Divisadero Players ("CDP") gang was covered at length in a RICO / VICAR Murder prosecution before Judge Orrick that focused on several members of CDP. *United States v. Alfonzo Williams, et al.*, 13-CR-0764 WHO (N.D. Cal.). In a 2017-18 jury trial, witnesses described routine acts of violence between these gangs. *See id.* at ECF no. 1581 *(*Reporter's Transcript of Proceedings Vol. 27 - December 21, 2017) at RT 4405, 4418-21, and 4423-24 (describing rivalry in general); 4438, 4448, 4475-78, and 4482-83 (discussing murders of CDP members by Eddy Rock gang members); and 4464-65, 4489, and 4513 (describing CDP members shooting at Eddy Rock members, including at a funeral for a slain Eddy Rock member).

## CONCLUSION

Darryl Deandre Rushing presents a significant danger to the community that cannot be mitigated through any condition or combination of conditions. This Court should order that he be detained pending trial.

DATED: January 5, 2024                                    Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
SLOAN HEFFRON
Assistant United States Attorney