ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

SLOAN HEFFRON (CABN 285347)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Sloan.heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 24-CR-00016-RFL |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: July 18, 2024 |
| DARRYL DEANDRE RUSHING, | Time: 2:00 p.m. |
| Defendant. | The Honorable Rita F. Lin |

**I.    INTRODUCTION**

On April 18, 2024, defendant Darryl Rushing pled guilty to the sole count of the Indictment: a violation of 18 U.S.C § 922(g)(1) (Felon in Possession of a Firearm and Ammunition). Rushing entered his guilty plea without a plea agreement with the government.

The United States joins U.S. Probation in recommending that the Court sentence Rushing to 63 months' imprisonment followed by three years of supervised release. Rushing is a recidivist felon and an admitted member of Eddy Rock, a violent San Francisco criminal street gang. For the majority of his adult life, Rushing has been either incarcerated or on some form of supervision. Nevertheless, he has still amassed a significant criminal record. Since 2013, Rushing has been convicted of felony offenses in four separate cases, on charges ranging from first degree residential burglary, to carrying a concealed

firearm, to battery resulting in serious bodily injury. During this same period, Rushing was also convicted of misdemeanor offenses in four additional cases. He has been sentenced to state prison in three separate cases and has returned to custody for violating the conditions of probation and parole.

In the present case, police found Rushing in possession of a stolen, loaded firearm concealed in a holster underneath his clothing. During this encounter, Rushing physically resisted officers' attempts to detain him in order to seize the firearm.

The government's recommended sentence is based primarily on the need to protect the public from Rushing, the need for specific and general deterrence, Rushing's history of serious criminal offenses, and his continued gang membership. Although Rushing has sustained serious injuries in two prior shootings, the need to ensure public safety and dissuade him from committing further crimes involving firearms must take precedence.

**II.    FACTS**

On Saturday, November 4, 2023, around 10:19 p.m., uniformed San Francisco Police Department ("SFPD") officers responded to an apartment building located on Turk Street in San Francisco following a report of a person attempting to break into an upstairs apartment within the building. Dkt. 32 (Presentence Investigation Report or "PSR") at ¶ 7; *see also* dkt. 1 (Criminal Complaint) at 2. Officers entered the apartment building and encountered Rushing standing behind the front counter in the lobby. PSR ¶ 8. Officers told Rushing why they were in the building, then proceeded to an upstairs apartment, where the officers met with the reporting party. *Id*.

After speaking with the reporting party, the officers returned to the lobby and spoke with Rushing. *Id*. ¶ 9. While speaking with one of the officers, Rushing bent forward at the waist and leaned over the counter. *Id*. Rushing's sweatshirt began to rise, exposing his midsection. *Id*. At this time, one of the officers observed the barrel of a firearm in a holster attached to Rushing's torso, underneath his sweatshirt, in plain view. *Id*. Upon seeing the firearm, the officer grabbed Rushing's right arm and raised it away from the area of the firearm. *Id*. A second officer grabbed Rushing's left arm. *Id*. Rushing tensed his muscles and pulled his arms closer to his chest. *Id*. Officers told Rushing to relax his arms, stop resisting, and place his arms behind his back. *Id*. Rushing refused numerous orders and

continued to physically resist officers. *Id.* Eventually, officers overcame Rushing's resistance and placed him in handcuffs. *Id.* At that point, an officer removed the holster from Rushing's torso. *Id.* ¶ 10. The holster contained a .40 caliber Glock semi-automatic pistol. *Id.* The firearm was loaded with 15 rounds of .40 caliber ammunition, one of which was in the chamber. *Id.* A subsequent records query revealed that the firearm was reported stolen in Houston in 2019. *Id.*

### III.  SENTENCING GUIDELINES CALCULATIONS

The government agrees with U.S. Probation's calculation of the applicable Sentencing Guidelines in this case. PSR ¶¶ 16-25, 36-37. In March 2020, Rushing was convicted of Battery with Serious Bodily Injury, a felony, in violation of California Penal Code § 243(d). *Id.* ¶ 35. A defendant's prior felony conviction under California Penal Code § 243(d) is a crime of violence for purposes of U.S.S.G. §4B1.2(a). *United States v. Perez,* 932 F.3d 782, 789 (9th Cir. 2019).

Because Rushing possessed the firearm in this case after sustaining a felony conviction for a crime of violence, a Base Offense Level of 20 applies under U.S.S.G. §2K2.1(a)(4)(A). PSR ¶ 16. Rushing's Total Offense Level is 19. *Id.* ¶ 25. This Total Offense Level accounts for a two-level increase because the firearm was stolen, U.S.S.G. §2K2.1(b)(4)(A), and a three-level reduction under U.S.S.G. §3E1.1(a)-(b) for acceptance of responsibility. *Id.* ¶¶ 17, 23-25. The government agrees that Rushing's 14 criminal history points place him within Criminal History Category VI. *Id.* ¶¶ 36-37.

An Offense Level of 19 in Criminal History Category VI yields an advisory sentencing range of 63 months to 78 months. *Id.* ¶ 71. U.S. Probation recommends that the Court sentence Rushing to a low-end custodial term of 63 months, followed by three years' supervised release. *Id.* at p. 21.

### IV.  SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence Rushing to a term of 63 months' imprisonment.

While sentencing courts must consider each of the factors set forth in section 3553(a), the following warrant further discussion in this case: the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); the need for

the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A)); the need for the sentence imposed to afford adequate deterrence to criminal conduct, 18 U.S.C. § 3553(a)(2)(B); and the need for the sentence imposed to protect the public from further crimes of the defendant, 18 U.S.C. § 3553(a)(2)(C).

The government's overriding concern in this case is that Rushing, an active gang member, presents a serious risk to public safety and has not been dissuaded from carrying loaded firearms despite multiple prior felony convictions and state prison sentences, including for a December 2015 felony firearms conviction. PSR ¶ 30.

**A. The History and Characteristics of the Defendant Justify a 63-month Sentence**

This case marks the fifth separate prosecution since 2013 in which Rushing has been convicted of a felony offense. PSR ¶¶ 30, 32-33, 35. Now 31 years old, Rushing falls under Criminal History Category VI, placing him among the class of offenders with the most significant criminal records. This classification is a reflection of his persistent and unabated involvement in criminal activity over the last 11 years.

While the mere existence of Rushing's prior felony convictions favors the imposition of a significant sentence in the present case, the facts underlying several of his prior convictions are particularly concerning. Details of the following three felony convictions underscore the inescapable conclusion that Rushing poses a serious danger to the community.

**2015 Residential Burglary Conviction**

In May 2015, Rushing was convicted in San Francisco of residential burglary, for which he sentenced to two years in state prison. *Id*. ¶ 32. That conviction arose from an incident in which Rushing and two other men, Deonte Smith and Jamariea Newt, committed a home-invasion robbery of a San Francisco residence occupied by an elderly married couple, ages 90 (husband) and 86 (wife) respectively. *Id*. The couple was present in their residence at the time of the home invasion. *Id*. SFPD officers responding to the residence observed three men—including Rushing—running down the street of the victims' residence and entering a vehicle (the "suspect vehicle"). *Id*. Officers attempted to contact the men, who proceeded to flee the scene in the suspect vehicle. *Id*. Officers then returned to

their police cars and chased the fleeing vehicle before eventually terminating the pursuit. *Id*. Shortly after, officers found that the suspect vehicle had crashed into a house and the three ment had fled on foot. *Id*. During their search of the nearby area, officers located and arrested the vehicle's driver, Deonte Smith. *Id*. Officers located Newt hiding under a nearby vehicle and placed him under arrest. *Id*. Officers found Rushing in a nearby backyard, hiding underneath a boat. *Id*. After taking Rushing into custody, officers located $301 cash underneath the boat where Rushing was hiding. *Id*.

Meanwhile, other officers responded to the victims' residence. *See* Declaration of Sloan Heffron ("Heffron Decl."), Exhibit A (Redacted excerpt of report from SFPD Incident No. 140168544), attached. There, one of the responding officers contacted the 86-year-old wife, who spontaneously exclaimed, "I'm so scared!" *Id*. The reporting officer described the wife as "nervous" and "shaking uncontrollably." *Id*. The wife said that she saw three black males in their 20s walking inside her house, and that one of the men forced his way into her bedroom and proceeded to go through her drawers. *Id*. The wife added that the only thing she knew to be missing was $300 cash. *Id*.

Officers also spoke with the 90-year-old husband, who stated that two unknown male subjects with masks approached him in his kitchen, and that one of the men struck him in the head with an unknown object. *Id*. The victims were unable to identify the persons responsible for the robbery and assault. PSR ¶ 32. At the time of this incident, Rushing was active to two grants of probation arising from prior burglary convictions. *Id*. ¶¶ 28-29.

**2015 Firearms Conviction**

The case presently before this Court is not the first instance in which Rushing physically resisted police after being found in possession of a stolen firearm. Rushing's December 2015 felony firearms conviction arose from an incident in which South San Francisco Police performed a traffic stop of a car driven by a woman observed smoking marijuana while driving. *Id*. ¶ 30. Rushing was seated in the front passenger seat of the car. *Id*. During a search of the vehicle, an officer found a firearm underneath Rushing's seat, at which point Rushing fled the scene on foot. *Id*. Following a brief pursuit, officers located Rushing, who proceeded to physically resist officers as they attempted to take him into custody. *Id*. Eventually, officers were able to subdue Rushing and he was placed in handcuffs. *Id*. At the time of

24-CR-00016-RFL

this incident, Rushing was active to two grants of probation arising from prior burglary convictions. *Id*. ¶¶ 28-29.

### 2020 Conviction for Battery with Serious Bodily Injury

Rushing's March 2020 felony conviction for Battery with Serious Bodily Injury resulted from a road rage incident captured on surveillance video. *Id.* ¶ 35. While driving a car in San Francisco, Rushing engaged in a verbal altercation with the victim, who was riding a bicycle. *Id*. Rushing proceeded to stop and exit his vehicle, then approached the victim on foot. *Id*. At that point, Rushing pushed the victim onto the ground, causing the victim to land on his wrist. *Id*. Rushing then returned to his car. *Id*. While pulling away, Rushing drove over the victim's bicycle and nearly stuck the victim as he (Rushing) fled the scene. *Id*. As a result of this incident, the victim suffered a broken wrist. *Id*. Rushing was on both probation and parole at the time of this event. *Id.* ¶¶ 30, 32-34.

### Rushing's Gang Affiliation

In addition to the aforementioned convictions, a key factor for this Court to assess is Rushing's longstanding membership in Eddy Rock, a violent criminal street gang based in the Fillmore neighborhood of San Francisco.[1] Indeed, Rushing himself previously acknowledged his membership in Eddy Rock. Specifically, in February 2014, Rushing was involved in a physical fight at the Tanforan Mall in San Bruno. PSR ¶ 31. Afterward, a San Bruno Police Department Officer observed mall security officers chasing Rushing from the area of the fight. *Id*. The uniformed police officer repeatedly ordered Rushing to stop, to no avail, and a foot pursuit ensued. *Id*. Eventually, police apprehended Rushing and placed him under arrest. *Id*. During a subsequent interview, Rushing acknowledged that he had been involved in a physical altercation at the mall, and further admitted to being an Eddy Rock gang member. *Id*.

---

[1] The violent rivalry between Eddy Rock and the Central Divisadero Players ("CDP") gang was covered at length in a RICO / VICAR Murder prosecution before Judge Orrick that focused on several members of CDP. *See United States v. Alfonzo Williams, et al*., 13-CR-0764 WHO (N.D. Cal.). At a 2017-18 jury trial, witnesses described routine acts of violence between these gangs. *See id.* at dkt. 1581 (Reporter's Transcript of Proceedings Vol. 27 - December 21, 2017) at RT 4405, 4418-21, and 4423-24 (describing rivalry in general); RT 4438, 4448, 4475-78, and 4482-83 (discussing murders of CDP members by Eddy Rock gang members); and RT 4464-65, 4489, and 4513 (describing CDP members shooting at Eddy Rock members, including at a funeral for a slain Eddy Rock member).

Beyond his own admission, Rushing's longstanding membership in Eddy Rock has been well-documented by various agencies, including SFPD, South San Francisco Police Department, and the California Department of Corrections and Rehabilitation ("CDCR"). *Id*. ¶¶ 38-39 (SFPD), 30 (South San Francisco PD and CDCR). Following Rushing's November 2023 arrest in the present case, SFPD Sergeant Patrick Griffin—who has previously provided expert testimony in California Superior Court concerning criminal street gangs in San Francisco—reported that Rushing was an Eddy Rock gang member. *See* Heffron Decl., Exhibit B (Chronological Report of Investigation from SFPD Incident No. 230789070).

In fashioning a sentence in this case, the Court should consider Rushing's history of recidivism and his longtime gang affiliation, as these facts inform the need to protect the community from further crimes of this defendant. Rushing has persuasively demonstrated that he is undeterred by prior convictions, terms of incarceration, or the conditions of probation or parole, much less the well-being of the victims or law enforcement officers who might encounter him while he is out of custody.

### B. The Offense Conduct is Serious and Rushing Poses a Future Danger to the Public

The nature and circumstances of the present offense justify a 63-month custodial sentence. All felon-in-possession cases are serious. This case is particularly serious because Rushing has prior convictions for violent crimes and a firearms offense, has repeatedly been sentenced to state prison, and is an Eddy Rock gang member. Nevertheless, Rushing was carrying on his person a loaded, stolen firearm, and he physically resisted police officers who attempted to seize the weapon from him.

According to the PSR, Rushing reported being shot on two occasions: in May 2020, he was shot in the right leg during what he described to Probation as a "robbery gone wrong." PSR ¶ 58. And in December 2022, Rushing was shot in the head at random while in the streets, resulting in a traumatic brain injury and blindness in his right eye. *Id.* ¶ 59. These injuries will likely feature prominently in Rushing's request for a lower sentence than that recommended by the government and U.S. Probation.

The government has sincere sympathy for Rushing's serious injuries and has taken them into account in recommending a sentence at the low-end of the Guidelines range. However, the Court should place public safety and specific deterrence of Rushing's future crimes at the forefront of its sentencing

analysis. That Rushing went on to possess a loaded, stolen firearm while working at an apartment building suggests that his injuries do not mitigate his future dangerousness. There is simply no indication that Rushing intends to stop carrying firearms. His injuries, while serious, are not evidence to the contrary.

A significant period of incarceration is also necessary to promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct. Here, Rushing has pleaded guilty to possessing a loaded firearm, knowing full well that his four prior felony convictions barred him from doing so. His actions in this case reflect either an inability or an unwillingness to conform his conduct to the law. The interest in specific and general deterrence of similar criminal conduct counsels in favor of a Guidelines sentence in this case.

### V. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Darryl Rushing to 63 months' imprisonment followed by three years of supervised release, with each of the terms and conditions recommended by U.S. Probation in the PSR. The United States further requests that the Court order forfeiture of the .40 caliber Glock semi-automatic handgun recovered in this case, as well as any and all ammunition seized with or in this firearm.

DATED: July 11, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

  /s/
SLOAN HEFFRON
Assistant United States Attorney